IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DENNIS DANNER, *et al.*,                *

           Plaintiffs,         *

v.                         *        Civil Action No.:  RDB-09-3139

INTERNATIONAL FREIGHT SYSTEMS *
OF WA, L.L.C.;
CARGOLUX AIRLINES         *
INTERNATIONAL S.A. d/b/a
CARGOLUX AIRLINES         *
INTERNATIONAL, INC.;
CARGO AIRPORT SERVICES USA, INC.;*
EVEN-ROCK, INC. d/b/a SEATTLE
AIR CARGO,                  *

           Defendants.
*    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

Plaintiffs Dennis Danner, Alex Danner, and Michael Coletta (collectively, "Plaintiffs")

bring this action against, *inter alia*, Defendant Even-Rock, Inc. d/b/a Seattle Air Cargo ("SAC,"

"Seattle Air Cargo," or "Defendant"), for alleged breach of duty regarding the temporary loss of

two crates containing lion skins and skulls acquired during a hunting trip in South Africa.

Among the motions pending before this Court is Seattle Air Cargo's Motion to Dismiss

Plaintiffs' Amended Complaint for Lack of Jurisdiction (Paper No. 19). Defendant's submissions

have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the

reasons stated below, Defendant's Motion to Dismiss for Lack of Jurisdiction (Paper No.19) is

GRANTED.

**BACKGROUND**

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and all reasonable factual inferences must be drawn in the plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Plaintiffs traveled to South Africa on a safari hunting trip in June, 2007, and each killed a "trophy quality" lion. Am. Compl. ¶ 9. The lions were subsequently skinned and salted to prepare them for transport. *Id.* On June 24, 2007, Plaintiffs completed export applications for the shipment of two crates containing the lion skins, skulls, and other hunting trophies from South Africa to the United States. Am. Compl. Exhibit 1. Plaintiffs hired Defendant Cargolux Airlines International S.A. ("Cargolux") to transport the two crates from South Africa to Seattle, Washington. Am. Compl. ¶ 10. Plaintiffs hired Defendant International Freight Systems of WA, L.L.C. ("International Freight") to act as a customs broker and to help with the transportation of the crates upon their arrival in the United States. Am. Compl. ¶ 12. The two crates arrived in Seattle on November 23, 2007 and the U.S. Department of Homeland Security and the U.S. Fish and Wildlife Service cleared the crates through United States Customs on November 28, 2007. Am. Compl. ¶¶ 11-12. It appears that Defendant Cargo Airport Services USA, Inc. ("Cargo Airport"), a cargo handler, transported the crates from the airport to Cargolux's warehouse in Washington state on November 28, 2007. Am. Compl. ¶ 11; Am. Compl. Exhibit 3. International Freight was to pick up the crates from Cargolux's warehouse and deliver them to Acheson Taxidermy in Butte, Montana. Am. Compl. ¶ 12. On November 30, 2007, International Freight instead contracted for Seattle Air Cargo, a cartage company, to deliver the crates from the Cargolux warehouse to Acheson Taxidermy. *Id.* ¶ 13; Paper No. 19. Plaintiffs allege that SAC signed for the release of the crates from

Cargolux's warehouse "via [Cargo Airport]" on November 30, 2007. Am. Compl. ¶ 13; Am.

Compl. Exhibit 3.

Plaintiffs contend that none of the Defendants could account for the location of the two

crates after November 11, 2007. Am. Compl. ¶ 16.[1] It appears that the crates ultimately were

found many months later in Vancouver, British Columbia, and that Canadian Customs returned

the crates to Cargolux's warehouse in Washington in September, 2008. Am. Compl. ¶ 17.

Plaintiffs received notice of the location of the crates upon the crates' return to Cargolux's

warehouse. *Id.* Cargolux refused to release the crates to Plaintiffs, and instead hired Conway

Trucking to deliver the crates to Acheson Taxidermy on or about September 10, 2008. Am.

Compl. ¶¶ 17-18. After the lion skins arrived at Acheson Taxidermy, Acheson Taxidermy sent

the skins to Wildlife Gallery to be tanned. *Id.* ¶ 19. Wildlife Gallery determined that the skins

had a buildup of moisture and bacteria, which had caused the skin hair to "slip," damaging the

skins nearly beyond repair. *Id.* ¶ 19.

Plaintiffs allege breach of contract and negligence against Defendants International

Freight and Cargolux and breach of duty and negligence against Defendants SAC and Cargo

Airport. Am. Compl. ¶¶ 21, 24, 30, 39. Plaintiffs demand a total judgment in the amount of

$111,820.00. Am. Compl. ¶¶ 23, 27, 31, 37, 41, 45. On March 3, 2010, SAC filed a Motion to

Dismiss for Lack of Personal Jurisdiction. Paper No. 19.

---

[1] Plaintiffs, however, do not cite any documents or testimony establishing why the November 11 date is noted in the Amended Complaint as the date after which Defendants allegedly lost track of the two crates.

**ANALYSIS**

I. Personal Jurisdiction over Defendant SAC

Seattle Air Cargo ("SAC") contends that personal jurisdiction is lacking in this case because no contacts exist between SAC and Maryland. SAC is incorporated in Washington state, where it also has its principal place of business. SAC conducts its business exclusively in Washington state and Oregon, is not qualified to conduct business in Maryland, and has never performed services in Maryland nor derived revenue from products used in Maryland. Paper No. 19, Virnig Aff. ¶ 2-3, 5-6. SAC also states it had no contact with Maryland in matters related to the present case. *Id.* ¶ 4. When a non-resident defendant challenges a court's personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the judge decides the jurisdictional question, and the plaintiff has the burden of proving grounds for jurisdiction by a preponderance of the evidence. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). In situations where a district court decides a pre-trial personal jurisdiction motion without holding an evidentiary hearing, the plaintiff is required only to make a prima facie showing of personal jurisdiction. *Id.* at 396 (citing *Combs v. Bakker*, 886 F.2d 673,676 (4th Cir. 1989)). The court must draw all reasonable inferences and disputed facts in favor of the plaintiff. *Carefirst,* 334 F.3d at 396.

Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Federal Rule of Civil Procedure 4(k)(1)(a), and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *see also Christian Sci. Bd. Of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215

(4th Cir. 2001). Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, the long-arm statute must still be examined as part of the two-step personal jurisdiction analysis. *Mackey v. Compass Mktg, Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006) (explaining that although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process . . . [it does not] mean . . . that it is now permissible to dispense with analysis under the long-arm statute"); *see also* Md. Code Ann., Cts. & Jud. Proc. §6-103(b) (Maryland long-arm statute).  Therefore, to satisfy the long-arm prong of a personal jurisdiction analysis, a plaintiff must specifically identify a provision in a Maryland statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Although it is preferable for a plaintiff to identify the statute authorizing jurisdiction in its complaint, a plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss. *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n. 1 (D. Md. 2004).

Plaintiffs state that they were emotionally and financially damaged by Defendants' alleged negligence, and that this tortious injury occurred in Maryland. Paper No. 22 ¶ 5; Am. Compl. ¶ 20.   Plaintiffs cite no statutory provision authorizing jurisdiction over Seattle Air Cargo under the Maryland long-arm statute, however, and fail to demonstrate in their complaint and subsequent responses that SAC

> (1) [t]ransacts any business or performs any character of work or service in the State (2) [c]ontracts to supply goods, food, services, or manufactured products in the State; (3) [c]auses tortious injury in the State by an act or omission in the State; (4) [c]auses tortious injury in the State or outside of the State by an act or omission *outside* the State *if he regularly does or solicits business, engages in other persistent course of conduct in the State* or derives substantial revenue from goods, food, services or manufactured products used or consumed in the State; [or] (5) [h]as an interest in, uses, or possesses real property in the State . . . .

Md. Code Ann., Cts. & Jud. Proc. §6-103(b)(1-5) (emphasis added). The crates containing the Plaintiffs' lion skins and skulls never passed through Maryland but instead traveled from South Africa to Washington state to British Columbia, back to Washington state, and finally to Montana. Thus, any alleged act or omission with regard to the crates had to have occurred outside Maryland. Even assuming Plaintiffs did suffer harm in Maryland by an act or omission committed elsewhere, Plaintiffs fail to show that SAC engaged in *any* course of conduct within Maryland, much less a regular or "persistent" course of conduct as required by the Maryland long-arm statute under §6-103(b)(4).

Despite Plaintiffs' failure to cite a specific statutory provision authorizing jurisdiction under the Maryland long-arm statute, this Court will nevertheless proceed to the next prong of the personal jurisdiction analysis and determine whether the exercise of personal jurisdiction would comport with the due process requirements of the Fourteenth Amendment. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A determination of what qualifies as "minimum contacts" depends on the number and relationship of a defendant's contacts to the forum state and whether a defendant's alleged act or omission is related to the present cause of action. The Fourth Circuit "has made it clear that due process requires that a defendant's contacts with the forum state be tantamount to physical presence there." *Ritz Camera Center, Inc. v. Wentling Camera Shops, Inc.*, 982 F. Supp. 350, 353 (D. Md. 1997) (citation omitted).

If a defendant's contacts with a forum state are "continuous and systematic," general jurisdiction exists, even if the particular contacts are unrelated to the present cause of action.

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984). Some types of

continuous activity do not "support the demand that the corporation be amenable to suits

unrelated to that activity." *Glynn v. EDO Corp.*, 641 F.Supp. 2d 476, 486 (D. Md. 2009)(quoting

*International Shoe*, 326 U.S. 310 at 318). General jurisdiction is only appropriate where "the

continuous corporate operations within a state are thought so substantial and are of such a nature

as to justify suit against it on causes of action arising from dealings entirely distinct from those

activities." *Id.* Plaintiffs do not appear to argue that general jurisdiction exists in the present case.

Specific jurisdiction exists in instances where a non-resident defendant "purposely

directed its activities toward residents of the forum state or purposely availed itself of the

privilege of conducting activities" in the forum state, where the plaintiff's cause of action "arises

out of or results from the defendant's forum-related contacts," and where the exercise of personal

jurisdiction is reasonable and "consistent with 'fair play and substantial justice.'" *Ritz Camera*,

982 F. Supp. at 353 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)); *see*

*also Carefirst*, 334 F.3d at 397 (using the language "constitutionally reasonable" in the place of

"consistent with fair play and substantial justice"). When a defendant purposefully avails himself

of conducting activities in the forum state, he "invok[es] the benefits and protections of its laws."

*Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F.Supp 364, 370 (D. Md. 1993)(quoting

*Burger King*, 471 U.S. 462 at 474-75). The Supreme Court states that the purposeful availment

requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of

'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S at 474; *see also Ritz*, 982

F. Supp at 353. The exercise of jurisdiction is thus allowed if a defendant's contacts are such that

he can "reasonably anticipate being haled into court" in the forum state. *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). General jurisdiction necessitates a

"significantly higher" level of minimum contacts than specific jurisdiction. *Atlantech*

*Distribution, Inc. v. Credit General Ins. Co.*, 30 F.Supp. 2d 534, 536 (D. Md. 1998).

Plaintiffs have not established that the requisite minimum contacts for personal

jurisdiction exist between Seattle Air Cargo and Maryland, and thus neither specific nor general

jurisdiction is authorized over SAC. There are *no* contacts between SAC and Maryland, and SAC

could thus not reasonably anticipate being haled into court in Maryland. SAC is incorporated in

Washington state, where it also has its principal place of business. The affidavit of Dave Virnig,

the President and Owner of SAC, states that SAC has no connection with Maryland, nor does it

conduct business in Maryland. Paper No. 19, Virnig Aff. ¶ 3. SAC does not solicit business in

Maryland, is not qualified to do so, has never employed individuals or established a physical

presence in Maryland, and has never owned real or personal property in Maryland. *Id.* ¶ 5-6.

There is no evidence that SAC purposefully availed itself of conducting business in Maryland or

invoked the benefits and protections of Maryland's laws. Although a series of activities may

culminate in "purposeful activity" within a state (*Potomac Design*, 839 F.Supp. 364 at 369),

there is no activity within the state of Maryland related to SAC. Because the contacts between

SAC and Maryland do not pass the minimum contacts threshold, it is unnecessary to evaluate the

various fairness factors to determine whether the exercise of jurisdiction would comport with

"fair play and substantial justice." *Id.* (quoting *Burger King*, 471 U.S. at 476-477).


II. Plaintiffs' Ancillary Claims

SAC is not an indispensable party as Plaintiffs claim. Paper No. 22, p. 4. Although other

Defendants submitted themselves to the jurisdiction of this Court and have filed cross-claims

against SAC, such actions have no bearing on SAC's Motion to Dismiss for Lack of Jurisdiction.

The Supreme Court has held that "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, *Ltd.*, 498 U.S. 5, 6 (1990). Rule 19 of the Federal Rules of Civil Procedure states that a party is not a required party if complete relief can be accorded to the plaintiff among the existing parties. *See* Fed. R. Civ. P. 19(a). Because Plaintiffs are seeking a total judgment of $111,820.00 from all Defendants and all Defendants are jointly and severally liable, SAC's absence would not prevent Plaintiffs from securing this amount from the other Defendants in this case, nor would SAC's absence leave the remaining Defendants with the risk of incurring multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(b).

The presence of a cross-claim against Seattle Air Cargo by its co-Defendant, International Freight (International Freight's Am. Answer, p. 11), does not affect the analysis of whether there is personal jurisdiction over SAC in Maryland. In Maryland, cross-claims under Federal Rule of Civil Procedure 13(g) are permissive, not compulsory, and "any affirmative claim which one defendant has against another may be litigated separately." *Murphy v. Bd. Of County Comm'rs*, 284 A.2d 261, 268 n.1 (Md. Ct. Spec. App. 1971). In cases where the cross-claim defendant, which in this instance is SAC, is in court to defend against the principal claim, "there typically can be no objection to the court's jurisdiction over the . . . crossclaim defendant." 6 Fed. Prac. & Proc. Civ. § 1433 (2d ed.). In this case, however, there is no jurisdiction over SAC in Maryland with regard to the primary claim. Where there is no jurisdiction over the cross-claim defendant with regard to the principal claim, "any personal-jurisdiction objections remain available." *Id; see also New Orleans Pub. Belt R.R. Co. v. Wallace*, 173 F.2d 145, 148 (5th Cir. 1949) (noting that if a trial court has no jurisdiction over a tort claim, no cross-claim may be asserted against a co-defendant). A court will have jurisdiction over a cross-claim, though, "if

there are independent grounds for jurisdiction over the cross-claim, regardless of the lack of jurisdiction in the original action." 6 Fed. Prac. & Proc. Civ. § 1433 (2d ed.). None of the co-defendants asserted independent grounds for jurisdiction over SAC in Maryland. Thus, the cross-claim brought against SAC must be adjudicated in a forum in which there is personal jurisdiction over SAC, and is dismissed in this case.

Plaintiffs' contention that Dave Virnig's affidavit is "disingenuous" is unsupported by the record. Paper No. 25 ¶ 1. Plaintiffs' attached documents in their Sur-Reply purporting to demonstrate that SAC maintains places of business in New York, Texas, and Pennsylvania, are undated and fail to disclose the source from which they were obtained. The minimum contacts analysis to determine whether jurisdiction is proper is to be performed with regard to the forum in question, which in this case is Maryland. The possible presence of property in other states or business dealings in other states or countries is irrelevant to the determination of whether there are minimum contacts between SAC and Maryland.[2] *See Shaffer v. Heitner*, 433 U.S. 186, 209 (1977). In *Shaffer*, the Supreme Court notes that "although the presence of the defendant's property in a state might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the state's jurisdiction." *Shaffer*, 433 U.S. at 209. The alleged connection in the present case is even more attenuated, as Plaintiffs allege that property held in states *other* than Maryland somehow provides a basis for jurisdiction in Maryland.

---

[2] Plaintiffs' argument that SAC has a place of business merely twenty miles from the Maryland border making it "almost inconceivable" that Defendant never delivered goods to an address in Maryland strains logic. Paper No. 25 ¶ 3. A sporadic delivery into the forum State would not satisfy the minimum contacts analysis, even assuming that SAC had ventured into Maryland and such entry was documented. Moreover, the list of alleged business locations lists the Pennsylvania business as one located in Chester *County*, Pennsylvania, not the city of Chester. The city listed for the address in question is Wayne, Pennsylvania, which is located northwest of Philadelphia, not merely twenty miles north of the Maryland border. Paper No. 25.

Plaintiffs also request discovery in their sur-reply. Paper No. 25 ¶ 5. Although discovery is "broad in scope and freely permitted" under Rule 26 of the Federal Rules of Civil Procedure, the only evidence Plaintiffs offer to refute Dave Virnig's affidavit are the undated, un-authenticated print-outs of SAC's alleged property holdings in other states. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). When a plaintiff offers only "conclusory assertions" about a defendant's contacts with a forum state, a court is "within its discretion" if it denies jurisdictional discovery. *Id.* Plaintiffs present no evidence that suggests that SAC has business contacts in Maryland. Even the Plaintiffs' Sur-Reply containing the list of SAC's alleged property holdings does not relate to contacts within Maryland.

III. Rule 11 Sanctions

SAC contends that Plaintiffs should be subject to Rule 11 sanctions under the Federal Rules of Civil Procedure because Plaintiffs do not assert facts supporting personal jurisdiction, meaning Plaintiffs' claims were not "warranted by existing law, as required by Rule 11." Paper No. 24, n.3. In the Fourth Circuit, sanctions are imposed for "maintaining a legal position to a court . . . when, in 'applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)). The way in which a claim is pled does not bear on Rule 11 sanctions; only the absence of *any* basis, legal or factual, is sanctionable. *Id.* at 153 (citation omitted). Nor does Rule 11 require that a claim be proven before a complaint is filed. *Id.* Instead, Rule 11 attempts only to discourage wasteful filing of "groundless lawsuits." *Id.*

In the present case, it appears that the claims filed against all Defendants for breach of contract, duty, and negligence are not frivolous. Even Plaintiffs' pending arguments regarding personal jurisdiction over SAC do not seem to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Plaintiffs ultimately offer a losing legal argument regarding personal jurisdiction over SAC, but such an argument does not rise to the level of an abuse of litigation. *See Hunter*, 281 F.3d at 150. Thus, this Court declines to impose Rule 11 sanctions against Plaintiffs.

## CONCLUSION

For the reasons stated above, Defendant Even-Rock, Inc. d/b/a Seattle Air Cargo's Motion to Dismiss for Lack of Jurisdiction (Paper No. 19) is GRANTED. This Court declines to impose Rule 11 Sanctions (Paper No. 24) on Plaintiffs. A separate Order follows.


Dated: June 15, 2010                              /s/_____

                                                  Richard D. Bennett
                                                  United States District Judge